UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| BOARD OF TRUSTEES, SHEET METAL WORKERS' NATIONAL PENSION FUND, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> CRENSHAW & BURKE CONSTRUCTION, INC. d/b/a CRENSHAW BROTHERS CONSTRUCTION, INC., *et al.*, <br><br> Defendants. | Civil Action No. 1:19-cv-561 (TSE/TCB) |

## REPORT AND RECOMMENDATION

THIS MATTER is before the Court on Plaintiffs' Motion for Default Judgment (Dkt. 14).[1] For the reasons articulated below, the undersigned U.S. Magistrate Judge recommends that Plaintiff's Motion for Default Judgment be granted.

### I. BACKGROUND

#### A.   **Procedural Posture**

Plaintiffs, the respective Boards of Trustees for the Sheet Metal Workers' National Pension Fund; International Training Institute for the Sheet Metal and Air Conditioning Industry; Sheet Metal Occupational Health Institute Trust; National Stabilization Agreement of the Sheet Metal Industry Trust Fund; and National Energy Management Institute Committee (collectively,

---

[1] The relevant filings before the Court include Plaintiffs' Complaint ("Compl.") (Dkt. 1); Plaintiffs' Motion for Default Judgment ("Mot. Default J.") (Dkt. 14); Brief in Support of Plaintiffs' Motion for Default Judgment ("Mem. Supp.") (Dkt. 15); Declaration of Kenneth Anderson Jr. ("Anderson Decl.") (Dkt. 15-1); Declaration of Diana M. Bardes ("Bardes Decl.") (Dkt. 15-2); and all attachments and exhibits submitted with those filings.

1


"the Funds" or "Plaintiffs"), filed this lawsuit on May 9, 2019 against Defendants Crenshaw & Burke Construction, Inc., doing business as Crenshaw Brothers Construction, Inc. ("Crenshaw") and Blue Rock Construction, LLC formerly known as Crenshaw Brothers Construction, LLC ("Blue Rock") (collectively, "Defendants")[2] seeking to collect a monetary judgment consisting of delinquent contributions, liquidated damages, accrued interest, audit fees, and attorneys' fees and costs. (Compl. ¶ 1; Mem. Supp. at 1.) The Funds brought this lawsuit pursuant to a collective bargaining agreement ("CBA"), the Trust Documents governing the Funds, the Labor Management Relations Act of 1974 ("LMRA"), *as amended*, 29 U.S.C. § 185, and the Employee Retirement Income Security Act of 1974 ("ERISA"), *as amended*, 29 U.S.C. §§ 1332(a)(3), (d)(1), (g)(2), 1445. (Compl. ¶ 1; Mem. Supp. at 1.)

Defendants have failed to appear in this matter or otherwise respond to Plaintiffs' Complaint. (Mot. Default J. ¶ 3.) After the Clerk entered default against Defendants (Dkt. 13), Plaintiffs filed the instant motion, accompanying memorandum, declarations, and supporting documentation. (Dkts. 14-15.) When Defendants failed to appear at the hearing before the Court (*see* Dkts. 16-17), the undersigned took this matter under advisement to issue this Report and Recommendation.

### B.     Jurisdiction and Venue

Before the Court can render default judgment, it must have (1) subject-matter jurisdiction, (2) personal jurisdiction, and (3) proper venue.

First, the undersigned finds that this Court has proper subject-matter jurisdiction. A federal district court has subject-matter jurisdiction over ERISA and LMRA actions pursuant to

---

[2] As discussed thoroughly below, the undersigned finds that Blue Rock is an alter ego of Crenshaw. Accordingly, the undersigned refers to the two companies synonymously throughout this Report and Recommendation.

the jurisdictional provisions in both statutes. *See* 29 U.S.C. § 185(c) (conveying jurisdiction to the federal district court in which a labor organization maintains its principal office or in which "its duly authorized officers or agents are engaged in representing or acting for employee members"); 29 U.S.C. § 1132(e)-(f) (conveying jurisdiction to the federal district court "where the plan is administered," regardless of the amount in controversy). Further, a federal district court has original jurisdiction over a civil action "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. In this case, Plaintiffs have asserted claims pursuant to ERISA and the LMRA, both of which are federal statutes. (*See* Compl. ¶ 1.) Furthermore, the Funds are administered in Fairfax, Virginia. (Compl. ¶¶ 4-8.) This Court accordingly has subject-matter jurisdiction over the claims in this action.

Second, this Court has personal jurisdiction over Defendants. Due to ERISA's nationwide service of process provision, personal jurisdiction is proper over those that have sufficient national contacts with the United States. *See* 29 U.S.C. 1132(e)(2); *Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. McD Metals, Inc.*, 964 F. Supp. 1040, 1045 (E.D. Va. 1997) (Ellis, J.). Defendants are incorporated in Pennsylvania and maintain their principal places of business in Erie, Pennsylvania. (Compl. ¶¶ 11-12.) As discussed more thoroughly below, Plaintiffs demonstrated that they validly served Defendants pursuant to Federal Rule of Civil Procedure 4 and ERISA's nationwide service of process provision. (*See* Dkt. 10.) Accordingly, Defendants have sufficient national contacts with the United States and the Court has personal jurisdiction over them.

Lastly, the undersigned finds that venue is proper in this Court. For ERISA and LMRA actions, venue is proper in the federal judicial district where the plan is administered. *See* 29 U.S.C. § 185(c) (in proceedings brought by labor organizations, "district courts shall be deemed

3

to have jurisdiction. . . in the district in which such organization maintains its principal office"); 29 U.S.C. § 1132(e)(2) ("Where an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered."). Here, the Funds are administered in the Eastern District of Virginia and their principal place of business is in Fairfax, Virginia. (Compl. ¶ 2; Anderson Decl. ¶ 3.) Moreover, venue is proper in a federal judicial district in which a substantial part of the events or omissions giving rise to the action occurred. *See* 28 U.S.C. § 1391(b)(2). Here, venue is also proper in this Court because a substantial part of the events giving rise to Plaintiffs' claims occurred in this district. (*See* Compl. ¶ 2; Anderson Decl. ¶ 3.)

### C. Service of Process

Lastly, before the Court can render default judgment, it must be satisfied that the defaulting party has been properly served. Here, on August 30, 2019, Plaintiff's process server served Defendants by delivering a copy of the Complaint and Summons to Camile Crenshaw, an administrative assistant "who accepted [service] as 'Adult Person in Charge' for Crenshaw" at 1854 East 26T Street, Erie, Pennsylvania, 16510. (Dkt. 10.) The undersigned finds that this service comports with Federal Rule of Civil Procedure 4(c), (e), and (h), and therefore Plaintiff effected proper service on Defendants.

## II. FINDINGS OF FACT AND PROPOSED FINDINGS OF LAW

When a defendant has defaulted, the well-pleaded allegations of facts set forth in the plaintiff's complaint are deemed admitted. *JTH Tax, Inc. v. Grabert*, 8 F. Supp. 3d 731, 736 (E.D. Va. 2014) (citing *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001)). However, the defaulting party is not deemed to admit conclusions of law or "allegations regarding liability that are not well-pleaded." *Balt. Line Handling Co. v. Brophy*, 771 F. Supp. 2d

4

531, 540 (D. Md. 2011) (internal quotation marks and citations omitted)). Consequently, before entering default judgment, the Court must evaluate the plaintiff's complaint against the standards of Federal Rule of Civil Procedure 12(b)(6) to ensure that the complaint properly states a claim upon which relief can be granted. *GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) (citations omitted).

Based on the Complaint, Plaintiffs' Motion for Default Judgment and the supporting Memorandum, the Declaration of Kenneth Anderson Jr., the Declaration of Diana M. Bardes, and the documents submitted in proof of damages and attorneys' fees and costs, the undersigned makes the following findings of fact and proposed findings of law.

### A.   The Parties

Plaintiffs are either employee-benefit plans/trust funds within the meaning of ERISA or joint labor-management organizations that provide benefits to certain collectively-bargained sheet-metal workers. (Compl. ¶¶ 4-8; Anderson Decl. ¶ 3.) The Funds are all administered out of offices located in Fairfax, Virginia. (Compl. ¶¶ 4-8; Anderson Decl. ¶ 3.) The Trustees of Plaintiff Funds collectively brought this lawsuit in the name of the respective trusts or plans on behalf of their participants and beneficiaries. (Compl. ¶ 9.)

Defendants are two companies incorporated in Pennsylvania, with their principal places of business at 2070 Buffalo Road, Erie, Pennsylvania 16510 (Crenshaw) and 1854 E. 26th Street, Erie, Pennsylvania 16510 (Blue Rock). (*Id.* ¶¶ 11-12.) Defendants are "employers" within the meaning of 29 U.S.C. § 152(2) and 29 U.S.C. § 1002(5) and have engaged in an industry affecting commerce within the meaning of 29 U.S.C. §§ 1002(11) and (12). (*Id.* ¶ 10.)

### B.   Joint and Several Liability

Plaintiffs assert that while Blue Rock is not a signatory to the CBAs giving rise to this

litigation, "Blue Rock is an alter ego of Crenshaw and/or constitutes a single employer with Crenshaw and thus is obligated to contribute to the Funds for covered employees." (Compl. ¶¶ 15-23; Mem. Supp. at 2-4; Anderson Decl. ¶¶ 6-10.) Specifically, Plaintiffs allege that Blue Rock was incorporated in February 2015 as "Crenshaw Brothers Construction, LLC," but then the corporate filings were amended to change the name of the company to "Blue Rock Construction, LLC" in August 2015. (Compl. ¶ 17.) The companies share "an interrelation of operations, common management, centralized control of labor relations, business purpose, equipment, customers, and common ownership." (*Id.* ¶¶ 18-20.) Further, Crenshaw and Bluerock share the same classification of employees who perform similar work in the same industry and geographic market. (*Id.* ¶ 21.) Lastly, the corporate address for Blue Rock is the same address that Crenshaw's corporate officers list on their corporate filings. (*Id.* ¶ 22.) Plaintiffs further allege that Crenshaw created Blue Rock—as a nonunion operation—to evade its labor obligations. (*Id.* ¶ 23.) In other words, "Blue Rock is reaping the financial advantage of not providing benefits as required by Crenshaw's [CBA], including its current and ongoing pension obligations." (*Id.*)

To determine whether a company is an alter ego under Fourth Circuit law, the Court must ask (1) whether the entities are "substantially the same" or if the "same entity controls both the old and new employer"; and, if yes, (2) "whether the transfer resulted in an expected or reasonably foreseeable benefit to the old employer related to the elimination of its labor obligations." *Alkire v. NLRB*, 716 F.2d 1014, 1020 (4th Cir. 1983); *see also, e.g., Bd. of Trs., Nat'l Stabilization Agreement of the Sheet Metal Indus. Tr. Fund v. Gillis Sheet Metal, Inc.*, No. 1:10cv33 (TSE/TRJ), 2010 WL 4025033, at *2 (E.D. Va. Sept. 21, 2010). The undersigned finds that Blue Rock is an alter ego of Crenshaw under this test. First, the companies are "substantially

identical" in that they share the same "management, business purposes, operation, equipment, customers, supervision[,] and ownership." (Mem. Supp. at 10.) The Court therefore finds that Crenshaw and Blue Rock are substantially the same, or at the very least, Crenshaw controls both companies. Second, Crenshaw received a clear benefit in conducting a second business not subject to obligations pursuant to CBAs at issue here. Crenshaw wanted to create a type of front company to do the exact same work, while disregarding its payment obligations and saving money in the process. The creation of Blue Rock resulted in an expected—or at least reasonably foreseeable—benefit to Crenshaw. *See, e.g., Bd. of Trs., Nat'l Stabilization Agreement of the Sheet Metal Indus. Tr. Fund v. Gillis Sheet Metal, Inc.*, No. 1:10-cv-00943 (LO/IDD), 2011 WL 1558701, at *5 (E.D. Va. Mar. 21, 2011). Accordingly, the undersigned finds that Defendants should be held jointly and severally liable for any judgment entered by this Court.

### C. Defendants' Obligations Pursuant to the CBAs, Trust Documents, ERISA, and the LMRA

At the relevant times, Defendant Crenshaw was a member of the Sheet Metal and Air Conditioning Contractors' National Association of Western Pennsylvania ("SMACNA") (Mem. Supp. at 2; Anderson Decl. ¶ 4.) SMACNA entered into a CBA with the International Association of Sheet Metal, Air, Rail and Transportation Workers formerly known as the Sheet Metal Workers' International Association, Local Union No. 12 ("Local 12"). (*See* Mem. Supp. at 2; Anderson Decl. ¶ 4.) Local 12 is a labor organization representing employees in an industry affecting interstate commerce. (Compl. ¶ 13.) Of relevance here, SMACNA and Local 12 entered into two successive CBAs—the first effective from July 1, 2010 to June 30, 2013, and the second effective from July 1, 2013 to July 1, 2016. (Anderson Decl. ¶ 4, Exs. 1-2.) Because Crenshaw was a member of SMACNA, Defendants were bound by these successive CBAs.

7

(Compl. ¶ 14.)

Pursuant to these CBAs, Defendants were obligated to submit monthly remittance reports and fringe benefit contributions to Plaintiffs for all hours worked or paid on behalf of Defendants' covered employees within the jurisdiction of Local 12. (Compl. ¶ 14; Anderson Decl. ¶ 5, Exs. 1-2.) Moreover, Defendants were obligated to abide by the terms and conditions of the Trust Agreements establishing the Funds, as well as any policies or procedures adopted by the Funds (collectively, "Trust Documents"). (Compl. ¶ 24; Anderson Decl. ¶ 11, Exs. 1-2.) Under the CBAs and Trust Documents, if Defendants fail to timely submit the required remittance reports and contribution payments, and the Funds file a lawsuit to recover the unpaid contributions, Defendants are contractually obligated to pay the following:

(1) Interest on the delinquent contributions at a rate of 0.0233% per day, compounded daily;
(2) Liquidated damages equal to the greater of (i) $50.00 or (ii) ten percent (10%) of the contributions due for each month of contributions that the [employer] fails to pay within thirty (30) days after the due date, but pays before any lawsuit is filed;
(3) Liquidated damages equal to the greater of (i) interest on the delinquent contributions at the above rate or (ii) liquidated damages equal to twenty percent (20%) of the delinquent contributions owed upon commencement of litigation; and
(4) The attorneys' fees and costs incurred by the Funds in pursuing the delinquent amounts, including the attorneys' fees and costs in this action.

(Compl. ¶ 29; Anderson Decl. ¶ 16, Exs. 3-4.)

Furthermore, ERISA provides that an employer "who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a [CBA] shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. When an employer fails to make required contributions due under a CBA, ERISA outlines the damages that a court must impose on the employer. *Cf.* 29 U.S.C 1132(g)(2). Specifically, the Court "shall" award:

8

(A)     the unpaid contributions,
(B)     interest on the unpaid contributions,
(C)     an amount equal to the greater of—
        (i) interest on the unpaid contributions, or
        (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
(D)     reasonable attorney's fees and costs of the action, to be paid by the defendant, and
(E)     such other legal or equitable relief as the court deems appropriate.

*Id.* Lastly, the LMRA also provides that federal courts can provide redress for an employer's breach of a CBA. *See* 29 U.S.C. 185(a). The LMRA provides for the enforcement of labor contracts—including provisions for interest and liquidated damages provided for by a CBA or a trust agreement incorporated into the CBA—that go beyond what ERISA expressly authorizes. *See Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. DCI Signs & Awnings, Inc.*, No. 1:08cv15 (JCC), 2008 WL 640252, at *3 (E.D. Va. Mar. 5, 2008) (citing *Keffer v. H.K. Porter Co.*, 872 F.2d 60 (4th Cir. 1989)). In other words, between ERISA and the LMRA, Plaintiffs can sue to enforce the terms of the CBAs and obtain relief for Defendants' nonpayment.

### D.     Defendant's Unpaid Contribution and Fees

Plaintiffs allege in their Complaint that despite Defendants' obligations under the CBA, Trust Documents, ERISA, and the LMRA, Defendants failed to timely submit the required contributions due to the Funds. (Compl. ¶ 30; Anderson Decl. ¶¶ 19-23.) Despite the Funds' attempts to contact Defendants before filing this lawsuit, Defendants failed to respond to the Funds' correspondence. (Compl. ¶¶ 36, 44.) The amounts owed by Defendants for two separate time periods are outlined below.

9

First, after the Funds conducted an audit of Defendants' payroll records from January 2012 through December 2014, the audit revealed that Defendants underreported hours worked by covered employees, and therefore underpaid contributions for certain months within the audit period. (*Id.* ¶ 33; Anderson Decl. ¶¶ 19-20, Ex. 5.) These underreported hours resulted in the assessment of interest and liquidated damages. (Compl. ¶ 33; Anderson Decl. ¶ 20.) For the time period from January 2012 to December 2014, Defendants owe:

(1)  $6,837.79 in unpaid contributions;
(2)  $6,441.77 in interest;
(3)  $6,441.77 in liquidated damages; and
(4)  $1,230.00 in audit-testing fees.

(Mot. Default J. ¶ 5(a)-(d); Anderson Decl. ¶¶ 19-21, Ex. 5.) These amounts total $20,951.33.

Second, Defendants also failed to timely remit contributions to the Funds on behalf of its covered employees for the period of March 2015 through April 2016, which further resulted in the assessment of interest and liquidated damages. (Compl. ¶ 40; Mot. Default J. ¶ 5(e)-(i); Anderson Decl. ¶¶ 22-23.) Specifically, Defendants owe:

(1)  $260.00 in unpaid contributions;
(2)  $244.94 in interest;
(3)  $244.94 in liquidated damages on unpaid contributions;
(4)  $1,050.36 in liquidated damages on late-paid contributions; and
(5)  $131.41 in interest on late-paid contributions.

(Anderson Decl. ¶ 23, Ex. 6.) These amounts total $1,931.65. Between these two delinquent periods, Defendants owe the Funds $22,882.98.

### E.  Attorneys' Fees and Costs

Lastly, Plaintiffs seeks attorneys' fees. *See* Mot. Default J. ¶ 6; *see also* 29 U.S.C. § 1132(g)(2)(D); Anderson Decl. ¶ 16(d), Exs. 3-4. Plaintiffs allege that Defendants owe attorneys' fees and costs totaling $6,342.50. (*See* Mem. Supp. at 13; Bardes Decl. ¶¶ 5-6.) Plaintiffs seek

10

this amount based on (1) $5,204.00 in attorneys' fees and (2) $1,138.50 in costs. (Bardes Decl. ¶¶ 5-6.)

First, Plaintiffs seek $5,204.00 in attorneys' fees based on 25.7 hours of billable work. In this matter, partners billed prelitigation rates of $250.00 per hour and litigation rates of $275.00 per hour. *(Id.* ¶ 5.) Associates billed at a rate of $225.00 per hour. *(Id.)* Lastly, paralegals billed prelitigation rates of $140.00 per hour, and litigation rates of $150.00 per hour. *(Id.)* Counsel spent time researching legal theories, drafting and filing the complaint, arranging for service of process, drafting and filing the clerk's entry of default, and drafting the instant motion and supporting documents. *(Id.)* In support of this request, Plaintiffs' counsel submitted an itemized chart of the legal services performed. *(Id.,* Ex. 2.) Upon review of the submitted billing entries, the undersigned finds that the number of hours counsel expended on the matter is reasonable. Further, the undersigned finds that the hourly rates are consistent with reasonable rates charged in the Eastern District of Virginia. *(See id.,* Exs. 2-3.)

Second, Plaintiffs seek $1,138.50 in costs, which include (1) $717.30 in process-server fees, (2) $400.00 in filing fees, and (3) $21.20 in postage and copying costs. *(Id.* ¶ 6.) Plaintiffs' counsel explains that the process server "encountered difficulties" in serving Defendants, which resulted in higher-than-normal fees. *(Id.* ¶ 7.) Apparently, Defendant Crenshaw did not have a listed registered agent and the address listed in its corporate filings was no longer in use. *(Id.)* Accordingly, Plaintiffs made eight (8) unsuccessful service attempts for Crenshaw. *(Id.)* Counsel ultimately paid the Erie County Sheriff's Office to serve Crenshaw. *(Id.; see* Dkt. 10.) Upon review of counsel's submissions, the undersigned finds it appropriate to award Plaintiffs' requested attorneys' fees and costs.

## IV. R̲e̲q̲u̲e̲s̲t̲e̲d̲ R̲e̲l̲i̲e̲f̲

As outlined above, Plaintiffs request that the Court (1) enter default judgment against Defendants and in favor of Plaintiffs; (2) enter judgment against Defendants in the amount of $22,882.98 for unpaid contributions, liquidated damages, audit-testing fees, and accrued interest; and (3) award $6,342.50 in attorneys' fees and costs. (Mot. Default J. ¶¶ 5-6.)

## V. R̲e̲c̲o̲m̲m̲e̲n̲d̲a̲t̲i̲o̲n̲

Upon review of the entire record in this matter, the undersigned first recommends that the Court grant Plaintiffs' Motion for Default Judgment against Defendants. Second, the undersigned recommends that the Court enter judgment against Defendants in the amount of $22,882.98 for unpaid contributions, liquidated damages, audit-testing fees, and accrued interest. Third, the undersigned recommends that the Court award Plaintiffs $6,342.50 in attorneys' fees and costs.[3]

---

[3] As discussed above, because the undersigned finds that Blue Rock is the alter ego of Crenshaw, the undersigned recommends that Blue Rock be held jointly and severally liable for any final judgment this Court enters against Crenshaw.

## VI. NOTICE

The parties are advised that objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of its service. Failure to object to this Report and Recommendation waives appellate review of any judgment based on it.

/s/
Theresa Carroll Buchanan
United States Magistrate Judge

THERESA CARROLL BUCHANAN
UNITED STATES MAGISTRATE JUDGE

January 17, 2020
Alexandria, Virginia